**Willie KIRK, Appellant,**

v.

**Homer F. MARCUM and Communique Corporation, Appellees.**

and

**Homer F. MARCUM and Communique Corporation, Cross-Appellants,**

v.

**Willie KIRK, Cross-Appellee.**

Court of Appeals of Kentucky.

June 13, 1986.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court Aug. 26, 1986.

Edward J. Walbourn, III, Robert L. Templeton, Hermansdorfer & Templeton, Ashland, for appellant/cross-appellee.

Joe F. Childers, Phillip Shepherd, Shepherd & Childers, Frankfort, for appellees/cross-appellants.

Before LESTER, McDONALD and REYNOLDS, JJ.

McDONALD, Judge:

On Wednesday, June 14, 1978, the appellee/cross-appellant, Homer F. Marcum, owner and publisher of the weekly newspaper, "The Martin Countian," printed a story on the front page of that paper concerning an alleged fight between Helen Horn, a Martin County jail matron, and the appellant/cross-appellee, Willie Kirk, the Martin County Judge. The headline read, "Powder Keg! Jailer's wife, judge, clerk duke it out in fist-fight...." Since the publication of this story, Kirk and Marcum have been "duking it out" in the courts. The appellant, Kirk, steadfastly asserts that he has never hit a woman in his life and did not engage in a fist fight with Ms. Horn. On June 11, 1979, represented by Attorney John Kirk, he filed a libel action against Marcum in the Martin Circuit Court. Due to a change in venue that case was tried in the Pike Circuit Court in April, 1981. In finding for the defendant, Marcum, the jury specifically found to be true the statement that Willie Kirk had been in a fist fight with Helen Horn.

Shortly thereafter on October 26, 1981, Marcum commenced this action for malicious prosecution. He named as defendants both Willie Kirk and John Kirk. The latter was dismissed by the trial court and this ruling is not challenged in this appeal. Again a change in venue was sought and the matter was assigned to the Boyd Circuit Court. Both parties' motions for summary judgment were overruled, and after several continuances were granted to Kirk, the case was heard by a jury on January 28, 1985. The jury awarded the appellees actual damages of $16,591.23 and punitive damages of $5,000.

In his direct appeal Kirk argues the trial court erred in failing to direct a verdict in his favor. He argues that he was entitled to a verdict as a matter of law as the evidence is "uncontroverted" that he relied on the advice of competent counsel, John Kirk, in pursuing the libel suit and as he reasonably believed he had a chance to succeed in the libel action. We disagree that the evidence was uncontroverted and hold that whether or not Willie Kirk had the requisite probable cause to sue Homer Marcum for libel was properly submitted to the jury for its determination.

We note that actions for malicious prosecution are not generally favored. The reason for this attitude is stated in *Raine v. Drasin*, Ky., 621 S.W.2d 895, 899 (1981), as follows:

Public policy requires that all persons be able to freely resort to the courts for redress of a wrong, and the law should and does protect them when they commence a civil or criminal action in *good faith* and upon *reasonable grounds*. [Emphasis added.]

Although disfavored, our jurisdiction has long recognized the right of an individual to be free from harassing or otherwise unjustified litigation. In pursuing that right in a case for malicious prosecution, the plaintiff must establish the following elements:

(1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding. [Citations omitted]

*Id.* The only element at issue in the direct appeal is that of probable cause.

We agree with Kirk's argument that where the facts are not in dispute the issue of whether probable cause existed to bring the underlying action is one for the court. We also agree that reliance upon advice of counsel is a complete defense to a claim of malicious prosecution. *Reid v. True*, Ky., 302 S.W.2d 846 (1957). We part ways with Kirk in his assertion that the facts in this case relating to probable cause were not in dispute.

Kirk testified, as did his attorney in the libel action, that he informed his counsel that the story in the paper was false, that he did not strike Helen Horn. Whether this was the "full and fair disclosure of all material facts," as required to satisfy this defense of advice of counsel, or a fictitious account of the events of that evening, is a fact question for the jury to decide. *Id.* We likewise disagree with appellee Marcum that the jury's determination in the libel case that Kirk hit Horn required the trial court as a matter of law to find Kirk did not make a full disclosure. The judge was correct to allow Kirk to again relate to the jury that the story was false in order to establish probable cause. Unfortunately for appellant, the second jury came to the same conclusion as the first one.

The appellant is particularly unhappy with the instruction that probable cause could be established by reliance upon the advice of a "disinterested, competent counsel." The jury was instructed that it could consider the following in determining whether his attorney was disinterested:

Whether counsel was so biased because of financial interest in the outcome, relationship of the parties, enmity against the plaintiffs or some other equally substantial reason as to have been incapable of giving good faith advice.

The appellant does not quarrel with the definition of "disinterested" provided by the court's instruction but complains of the court's inclusion of the requirement of his attorney's "disinterest" as a necessary element of this defense. The trial court relied on the case of *Kroger Grocery & Baking Co. v. Hamlin*, 193 Ky. 116, 235 S.W. 4, 7 (1921), which holds that "the consulted attorney, as has been sometimes stated by this court, must not only be a competent one, but also disinterested." The appellant admits that this holding, which he refers to as a "singular aberration," has not been overruled but argues that it is no longer a correct statement of the law. We suspect more recently reported malicious prosecution actions have failed to articulate this

requirement as the attorney's "interest" in those cases has not been in issue. In *Puckett v. Clark*, Ky., 410 S.W.2d 154 (1966), however, the issue of the attorney's disinterest was raised and, significantly, the court did not hold that the interest or disinterest of one's attorney was no longer a relevant fact to the defense of reliance on that attorney's advice. Rather, the court held that a lawyer, merely by virtue of his representation of a client, does not become "interested" as a matter of law as that term relates to the defense raised. *Id.* at 158.

Kirk also relies on *Worley v. Columbia Gas of Kentucky, Inc.*, 491 F.2d 256, 264 (6th Cir.1973), which notes, "Moreover, Kentucky law requires only that an attorney be in possession of all the facts, not that he be disinterested, for the defense of advice of counsel to be valid in a malicious prosecution case." This decision cited no authority for this position and, as stated hereinbefore, this statement is not an accurate reflection of the law in Kentucky as set forth by our highest court in *Kroger Grocery, supra.*

Kirk further argues that the *Kroger* case should no longer be considered the law on public policy grounds. He argues that if the case is given continued approval it will prevent litigants from seeking advice from relatives and "strike a serious blow to the willingness of attorneys to accept cases on a contingent-fee basis." We disagree with such reasoning, and were we in a position to overrule the *Kroger* case, we would decline. Whether one seeks advice from one he knows or should know to be disinterested is evidence clearly bearing on the issue of his good faith in filing a complaint.

In the instant case the factors for the jury's consideration in determining whether Kirk's attorney was disinterested include charges infinitely more serious than one's blood relationship or fee arrangement. Certainly in this case there was substantial evidence of all those factors presented to the jury. For example, Kirk's attorney, John Kirk, is the ap-

pellant's first cousin once removed; John Kirk had previously hired Marcum as a feature writer for his paper, the "Martin County Mercury," and alleged he fired Marcum for dishonest reporting; John Kirk's newspaper, the "Mercury," went out of business very soon after Marcum started his own paper, "The Martin Countian;" John Kirk sued Marcum for libel on his own behalf and amended his complaint at least two or three times to allege other instances of libel; John Kirk sued Marcum on behalf of a client other than Willie Kirk; and finally, John Kirk, as county attorney, prosecuted charges against Marcum for unlawful transactions with a minor based on allegations that Marcum kept young boys from school to sell newspapers. Kirk was not successful, by the way, in any of the civil or criminal charges brought against Marcum. The evidence of not only financial gain to be had by destroying Marcum's business by the continual pattern of bringing lawsuits, but personal enmity as well, were certainly sufficient to submit the question of John Kirk's disinterest to the jury.

Of course, whether John Kirk was sufficiently disinterested to advise the appellant, Willie Kirk, would not destroy Kirk's defense of probable cause if in fact he reasonably believed he had a chance to win the libel proceeding. *Harter v. Lewis Stores*, Ky., 240 S.W.2d 86 (1951). Of course, whether he could "reasonably believe" he could win would depend on whether he actually hit Helen Horn, as reported in the alleged libelous story, and again this was properly put to the jury.

▆ The appellant argues that probable cause was established as a matter of law by the trial court's failure to sustain Marcum's motion for a directed verdict in the libel action. This is an interesting argument but nevertheless invalid. No presumption arises concerning the plaintiff's probable cause merely because the defendant loses prejudgment motions such as a motion for summary judgment or, as here, a motion for directed verdict. It is our belief that the only significance in the mali-

cious prosecution action to the fact that the prior case went to the jury is that it established the necessary element that the plaintiff succeeded in the prior action on the merits of that claim. In ruling on a defendant's motion for directed verdict the court must draw all fair and rational inferences in favor of the plaintiff and grant the motion only when the evidence is insufficient to support a verdict for the plaintiff. *Spivey v. Sheeler*, Ky., 514 S.W.2d 667 (1974). With such a minimal showing necessary to defeat the motion, the denial of a motion for directed verdict does not establish that a plaintiff had probable cause to institute the civil proceeding.

▆ In his cross-appeal Marcum alleges the trial court erred in excluding evidence regarding his mental anguish suffered as a result of the malicious prosecution action and in overruling his motion at trial to amend his complaint to allege such damages. We agree. Marcum's complaint clearly set out that Kirk's libel suit caused him "great emotional strain and anguish;" thus, Kirk should not have been surprised that Marcum sought damages for such at trial. Although his complaint did not seek a specific amount of damages for mental anguish, CR 15.02 provides that pleadings may be amended "freely" unless the objecting party would be prejudiced. Finally, the case of *Barnes v. Culver*, 192 Ky. 10, 232 S.W. 39 (1921), holds that "[h]umiliation, mortification, and loss of reputation naturally and necessarily result from a malicious prosecution, and are therefore presumed in law and recognized as elements of damages under a general plea of damages...." As Marcum did not seek to recover more than the $35,000 pled as damages in his original complaint, and as the complaint alleged such emotional distress resulting from the prior suit, we find the court's ruling in this regard to be in error.

Kirk argues that Marcum stated in his pretrial deposition that he was not seeking any amounts for emotional distress. This is not reflected by the record. When asked

about paragraph 16 of his complaint wherein he alleged to have incurred $35,000 for expenses in defending the libel suit, Marcum stated that the figure represented "actual out of pocket" expenses. Marcum was never questioned in his deposition, however, about his allegations of "emotional strain and anguish" set forth in paragraph 14 of the complaint, and at no time stated he was not seeking damages for that distress.

Because of the court's error in this regard the matter is remanded for a new trial on the issue of damages only. The judgment is affirmed in all other respects.

All concur.